IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
BRENDA J. SANDEN,                     )
                                      )      2:04-cv-2062-GEB-GGH
                  Plaintiff,          )
                                      )
      v.                              )      ORDER*
                                      )
MIKE JOHANNS, Secretary,              )
Department of Agriculture,            )
                                      )
                  Defendant.          )
_____)
```

Defendant moves to dismiss Plaintiff's Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6) on the grounds that it is time-barred.[1] In the alternative, Defendant moves for summary judgment. Plaintiff opposes the motion.

---

\*  This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

[1] Defendant also moves for dismissal under Federal Rule of Civil Procedure 12(b)(1). However, since Defendant has not shown that the motion raises a jurisdictional issue, the Rule 12(b)(1) motion need not be decided. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (where the Supreme Court held "that filing a timely charge of discrimination with the [Equal Employment Opportunity Commission] is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.")

1

I. Motion to Dismiss

Defendant seeks dismissal of Plaintiff's employment discrimination claims alleged under the Rehabilitation Act of 1973.[2] Specifically, Plaintiff alleges the following claims: "[d]isparate treatment because of Plaintiff's [] disability"; that "Defendant failed to provide a reasonable accommodation for Plaintiff's physical disability"; that Defendant retaliated against her "for writing [] a letter to the [Natural Resources Conservation Service ("NRCS")] State Administrative Officer"; and that "Defendant constructively terminated [her] by denying [her] request to transfer to another duty station." (Compl. ¶¶ 4, 6.)

Dismissal is appropriate under Rule 12(b)(6) if Plaintiff failed to (1) present a cognizable legal theory, or (2) plead sufficient facts to support a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). When considering the motion, all material allegations in the Complaint must be accepted as true and construed in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, Plaintiff is given the benefit of every reasonable inference that can be drawn from the allegations in the Complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963). Accordingly, the motion must be denied "unless it appears beyond doubt that [Plaintiff] can prove no set of facts in support of [her] claim

---

[2] Plaintiff also alleges a claim for gender discrimination under Title VII. (See Compl. ¶¶ 3, 4.) However, in her Opposition, Plaintiff says "she is withdrawing any claims related to gender." (Opp'n at 19.)

1  which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41,
2  45-46 (1957).
3        Defendant argues that Plaintiff's Complaint must be
4  dismissed because she failed to consult with an Equal Employment
5  Opportunity ("EEO") counselor within the required forty-five days
6  prescribed in 29 C.F.R. § 1614.105(a).[3] (Mot. at 5:10-13.)
7  Specifically, Defendant contends that "Plaintiff initiated contact
8  with an EEO counselor on February 27, 2001" for alleged
9  "discrimination [that] occurred in May 1992, . . . November 28, 2000
10 and December 18, 2000." (Id. at 5:20-22.)  Defendant argues that even
11 considering the last date on which the alleged discriminatory activity
12 occurred, December 18, 2000, her consultation with the EEO counselor
13 was "twenty-five days late."  (Id. at 6:16.)
14       Plaintiff counters arguing that "she first spoke to an EEO
15 counselor on January 3, 2001."  (Opp'n at 10.)  Plaintiff cites the
16 "EEO's Counselor Report," as support for this argument, which is
17 attached to her Opposition, and which states that the "date of action"
18 is "January 2001."  (EEO Counselor's Report in Supp. of Opp'n at 5.)
19 Defendant rejoins that "[w]hile [P]laintiff contends that she spoke to
20 an EEO counselor in Davis, California, on January 3, 2001, and on
21 subsequent dates thereafter, [there is] no record of any such
22 contacts, in person or by telephone." (Reply at 2:4-7; see Decl. of
23 Rene Rodriguez in Supp. of Reply ¶¶ 3, 4 at 1 ("I am the only EEO
24 counselor that works in the Davis, California office . . . I do not

---

[3]  29 C.F.R. § 1614.105(a)(1) provides that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."

recall having any contact with [Plaintiff] regarding EEO matters.").) Since a motion to dismiss must be denied "unless it appears beyond doubt that [Plaintiff] can prove no set of facts in support of [her] claim" and it is unclear whether Plaintiff timely contacted an EEO counselor, Defendant's motion is denied. <u>Conley</u>, 355 U.S. at 45-46.

II. Summary Judgment[4]

Defendant also seeks summary judgment on Plaintiff's claims. Plaintiff is legally blind.[5] (Def.'s Statement of Undisputed Facts ("SUF") ¶ 1.) In 1992, Plaintiff was hired by NRCS, an agency of the United States Department of Agriculture, in Nebraska. (<u>Id.</u> ¶ 2.) Plaintiff was transferred to Massachusetts and Washington, D.C. before being placed as a Contract Specialist in Davis, California. (<u>Id.</u> ¶¶ 3-5.) To help assist Plaintiff with her disability, NRCS provided her with a reader for four hours a day and with computer equipment. (<u>Id.</u> ¶¶ 6,7.) On October 13, 2000, Plaintiff wrote a letter to Mr. J.R. Flores, NRCS's State Administrative Officer, "outlin[ing] her lack of accommodation." (Pl.'s Statement of Disputed Facts ("SDF") at 4; <u>see</u> Letter to Mr. J.R. Flores in Supp. of Opp'n.) In response to

---

[4] The standards for summary judgment are well known and will only be repeated as necessary herein.

[5] The undisputed facts in this section are based on Defendant's Statement of Undisputed Facts, filed within its Motion. (<u>See</u> Mot. at 2-5.) Plaintiff did not file a Statement of Undisputed Facts in response to Defendant's Statement as required by Local Rule 56-260. (<u>See</u> L.R. 56-260, which provides that "[a]ny party opposing a motion for summary judgment . . . shall reproduce the itemized facts in the Statement of Undisputed Facts, and admit those facts that are undisputed and deny those that are disputed . . . .") Plaintiff filed a Statement of Disputed Material Facts within her Opposition. (<u>See</u> Opp'n at 2-9.) All of the facts in Defendant's Statement of Undisputed Facts are undisputed because Plaintiff failed to "present specific facts demonstrating that there is a factual dispute . . . ." <u>Zoslaw v. MCA Distrib. Corp.</u>, 693 F.2d 870, 893 (9th Cir. 1982).

4

1  Plaintiff's October 13 letter, "[o]n or about November 10, 2000, NRCS
2  hired the Sensory Access Foundation ("SAF"), an organization which
3  assists blind or visually impaired people to obtain or retain
4  employment by providing access to technology assessment, computer
5  training, job placement and accommodation services, to evaluate
6  [P]laintiff on the job and make recommendations on how she could be
7  better accommodated."  (SUF ¶ 8.)

8         In November 2000, before SAF completed its report, NRCS's
9  Washington, D.C. office determined that certain positions would be
10 eliminated as they became vacated in an effort to streamline the
11 agency.  (Id. ¶ 9.)  Plaintiff's position was one of the three
12 positions in Davis to be eliminated.  (Id.)  However, "the positions
13 were to be maintained for as long as the employees stayed in the
14 positions; if the employees vacated the positions, then elimination
15 would take effect."  (Id.)  "On December 18, 2000, [P]laintiff's
16 husband, who also worked at NRCS in Davis, voluntarily accepted a
17 promotion to the Red Bluff Area Office."  (Id. ¶ 12.)  However,
18 "[t]here was no Contract Specialist position available in [Red Bluff]
19 to reassign [P]laintiff."  (Id. ¶ 11.)  Plaintiff moved to Red Bluff
20 with her husband and "requested a transfer to [the] Red Bluff
21 [office], or a nearby location, but there were no vacancies."  (Id.
22 ¶¶ 13, 14.)  Plaintiff signed an Employee Resignation Form on
23 December 20, 2000.  (Id. ¶ 15.)  Plaintiff's "resignation [was
24 nevertheless only made] effective as of January 2, 2002, approximately
25 one year later, in order for [P]laintiff to return to her job as a
26 Contract Specialist at the NRCS office in Davis if she chose before
27 that date."  (Id. ¶ 14.)
28

### A. Failure to Accommodate

Defendant seeks summary judgment on Plaintiff's failure to accommodate claim asserting that "there is sufficient evidence to demonstrate [its] good faith efforts undertaken . . . to accommodate [P]laintiff's disability prior to her resignation in December 2000." (Mot. at 8:4-6, 20-22.)  Under the Rehabilitation Act of 1973, "governmental employers [must] make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program."  Fuller v. Frank, 916 F.2d 558, 561 (9th Cir. 1990) (citing 29 C.F.R. § 1613.704(a)).  "Determining whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's requests . . . ."  Feliberty v. Kemper Corp., 98 F.3d 274, 280 (7th Cir. 1996).  Further, "the 'legislative history makes clear that employers are required to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations.'"  Hadley v. Wal-Mart Stores, Inc., 2001 WL 34039486, at *6 (D. Or. Nov. 19, 2001) (citing Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1101 (9th Cir. 2000)).  "Generally, the interactive process 'is triggered [] by a request for accommodation by a disabled employee.'"  Id. (citing Barnett, 228 F.3d at 1112).  "Once the interactive process has been triggered, the employer must make a reasonable effort to identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations."  Sicoli v. Nabisco Biscuit Co., 2000 WL 1268255, at *3 (E.D. Pa. Aug. 30, 2000).

It is undisputed that Defendant commenced a process of ascertaining if Plaintiff could be better accommodated in response to her October 13, 2000 letter. (See Mot. at 9:1-3; see also Opp'n at 14, in which Plaintiff acknowledges that as a result of her letter to Mr. Flores, NRCS hired SAF to conduct a full analysis of her accommodation needs.) Specifically, NRCS hired SAF to evaluate Plaintiff's situation and make recommendations as to how Plaintiff could be better accommodated. (Mot. at 9:1-3; Decl. of Sharon Bost in Supp. of Mot. ("Bost Decl.") ¶ 10.) Plaintiff resigned prior to the completion of the SAF report. (See Mot. at 9:1-3, 16-19; Bost. Decl. ¶¶ 15, 17; Ex. G, Aff. of Sharon Bost in Supp. of Mot. at 251.)

Although Plaintiff argues that her "requests for reasonable accommodation were not granted" she does not support this argument with evidence of specific requests made to NRCS prior to the October 13 letter she sent to Mr. Flores. (See Opp'n at 15.) Plaintiff points to her own affidavit and that of Cathy Murtha, "an outside trainer from the Sacramento Society for the Blind," to support her failure to accommodate claim.[6] (Id. at 14.) Plaintiff states that she had computer problems and "trouble getting adequate reader time." (Id. at 13; Aff. of Brenda Sanden in Supp. of Opp'n ("Sanden Aff.") at 150-55, 156-58.) In addition, although Plaintiff states "that [NRCS] would not listen to [Cathy Murtha's] [accommodation] recommendations," Ms. Murtha's affidavit states that she did not talk "to management

---

[6] Plaintiff also cites to her expert, Dr. Frederic K. Schroeder, in support of her failure to accommodate claim. However, his propositions, that had Plaintiff been given better computer accommodations she would have received better evaluations and that managers very rarely understand the needs of blind workers, are not relevant on the issue whether Plaintiff made requests for accommodation to NRCS before her October 13 letter. (See Opp'n at 15.)

7

about [Plaintiff's] problems" because Plaintiff asked her not to, and she also "didn't submit a written report." (Opp'n at 14; Aff. of Cathy Anne Murtha in Supp. of Opp'n ("Murtha Aff.") at 300.)

Accordingly, since there is no genuine issue of material fact that NRCS was in the process of ascertaining how it could respond to Plaintiff's request for accommodation when she left her position in Davis and moved to Red Bluff with her husband, Defendant's motion for summary judgment on the failure to accommodate claim is granted. See Rennie v. United Parcel Serv., 139 F. Supp. 2d 159, 172-73 (D. Mass. 2001) (stating that plaintiff's resignation from her employment before her employer could evaluate her request to be reasonably accommodated constituted "a complete failure [on plaintiff's part] to continue to engage in the interactive process and prevented [her employer] from making any further attempts to reasonably accommodate her [; consequently plaintiff could not] prove that [her employer] failed to accommodate her."); see also Witt v. N.W. Aluminum Co., 117 F. Supp. 2d 1127, 1133 (D. Or. 2001) ("[S]ummary judgment [on a failure to accommodate claim may be granted] where there is no genuine dispute that the employer has engaged in the interactive process in good faith.")

B. Disability Discrimination

Defendant also seeks summary judgment on Plaintiff's disability discrimination claim arguing that "Plaintiff cannot establish that she was the subject of an adverse action by NRCS and that she was treated adversely because of her disability." (Mot. at 14:9-11.) Further, Defendant contends that even assuming "[P]laintiff could meet her prima facie burden" on this claim, NRCS has "legitimate, nondiscriminatory reasons for its actions." (Id. at

15:22, 27.)  Plaintiff responds that NRCS's "unwillingness to secure [Plaintiff's] transfer [to the Red Bluff area] is tied directly to [Plaintiff's] disability."  (Opp'n at 16.)  Plaintiff argues that "all married couples who worked for the agency of which she was aware were able to secure transfers as a 'package deal.'"  (Id.)  Plaintiff points to the affidavit of Sarah Chavez-Magalong, who avers that "[n]ormally when a married person is transferred, they find a job for the spouse" and that she "believe[d] that [management] could have found a place for [Plaintiff] to work [in Red Bluff]."  (Aff. of Sarah Chavez-Magalong in Supp. of Opp'n at 293, 292.)  However, belief alone is insufficient to create a genuine issue of material fact.  Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc., 944 F.2d 1525, 1529 (9th Cir. 1991) (finding that a declarant stating "I believe" is insufficient when speculating as to motivation behind decision).

Plaintiff also argues that "work existed in the Red Bluff region that she could have performed."  (Opp'n at 17.)  In support of this assertion, Plaintiff argues that Barbara Ammon "who worked in the Red Bluff region actively sought information from [Plaintiff] regarding how a back log of contract work could be handled[,]" and that "[t]his evidences the need for a contract specialist in that region."  (Id. at 16-17; see Sanden Aff. at 166-69.)[7]  Plaintiff also argues that "Robert Bailey, a lead person for the Red Bluff region, []

---

[7] Defendant objects to Plaintiff's reference to the statements made by Barbara Ammon, arguing that they are hearsay, and to the "double hearsay statements of Sarah Chavez-Magalong . . . whose [affidavit] . . . is unsigned and therefore inadmissible."  (Reply at 9:20-21, n.9)  These objections are sustained.  See Mason v. Clark, 920 F.2d 493, 495 (8th Cir. 1990) ("We have no hesitation in stating that an unsigned affidavit is not sufficient evidence [to defeat] a motion for summary judgment.").

9

expressed interest in creating a new administrative position to support him and his team." (Opp'n at 17.) Plaintiff argues that "[h]e interviewed [her] and was very excited about hiring her, but all that changed once he consulted with individuals in the state office." (Id.) Plaintiff supports this argument with her averment that she "*suspect[ed]* that when Mr. Bailey contacted management in the State Office, he was told about [her] complaint and accommodation issues and they told him they didn't want to deal with [her] any longer." (Sanden Aff. at 167.) (emphasis added). Such speculation is not evidence sufficient to create a genuine factual dispute. See Columbia Pictures Indus., Inc., 944 F.2d at 1529.

"To establish a prima facie case of disability discrimination, a plaintiff must show (1) [s]he is disabled within the meaning of the statute; (2) [s]he is otherwise qualified for the position; (3) [s]he was adversely treated because of h[er] disability; and (4) [s]he worked for the federal government." Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1207 (S.D. Cal. 2002) (citing Reynolds v. Brock, 815 F.2d 571, 573-74 (9th Cir. 1987)). If Plaintiff can establish a prima facie case of disability discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. The burden then shifts back to the plaintiff to produce evidence sufficient to allow a reasonable factfinder to conclude that defendant's articulated reason is pretextual." Id. "In other words, [] plaintiff 'must tender a genuine issue of material fact as to pretext in order to avoid summary judgment.'" Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1983) (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983)). Therefore, "when evidence to refute the defendant's

legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case." (Id. at 890-91.)

Assuming, *arguendo*, that Plaintiff has established a prima facie case, Defendant has successfully demonstrated a legitimate nondiscriminatory reason for NRCS's actions.  Specifically, Defendant asserts, with supporting evidence, that "[t]he decision to create a new staffing plan for the consolidation of the administrative staffs of three agencies was a National Headquarters project independent of any involvement of [P]laintiff's supervisors at the NRCS office in Davis."  (Mot. at 15:27-28, 16:1-2; see Bost Decl. ¶ 11; Ex. A, Aff. of Jeffrey Vonk in Supp. of Mot. at 180; Ex. B, Aff. of Henry C. Wyman in Supp. of Mot. at 188.)  Defendant also contends, with supporting evidence, that "[P]laintiff was not transferred or reassigned to Red Bluff, or a nearby location, because no vacant positions existed" and "[h]ad [Plaintiff] not moved from Davis, her Contract Specialist position would have not have been eliminated."  (Mot. at 16:4-5, 15:5-6; see Bost Decl. ¶¶ 13, 11.)  Defendant also states that it "has no [] custom or policy of keeping spouses together when one spouse transfers to another office."  (Reply at 9:14-15, n.9; see Bost. Decl. in Supp. of Reply ¶ 3.)

Plaintiff has not provided substantial evidence refuting Defendant's legitimate explanations.  Accordingly, Defendant's motion for summary judgment on Plaintiff's disability discrimination claim is granted.  See Wallis, 26 F.3d at 890 ("'[A] plaintiff cannot defeat summary judgment simply by making out a prima facie case'" and "'[plaintiff] must do more than establish a prima facie case and deny

the credibility of the [defendant's] witnesses.'") (internal citations omitted).

### C. Constructive Discharge Claim

Defendant argues that "Plaintiff cannot establish a prima facie case of constructive discharge because she does not even intimate that she was subjected to a hostile work environment or that she was compelled to resign because the working conditions at the NRCS office in Davis were so intolerable that a reasonable person likewise would have felt compelled to resign." (Mot. at 17:14-17.) Plaintiff introduces the same arguments and supporting evidence as she did in response to Defendant's motion for summary judgment on Plaintiff's disability discrimination claim, arguing that "[b]ecause there was no transfer, she was forced to resign" and "the lack of accommodations made it very difficult for [Plaintiff] to do her job and advance within the organization." (Opp'n at 16.)

"'A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable.' Thus, an employee need not demonstrate that his employer intended to force him to resign, but merely that his conditions of employment were objectively intolerable." Lawson v. Wash., 296 F.3d 799, 805 (9th Cir. 2002) (quoting Draper v. Coeur Rochester, 147 F.3d 1104, 1110 (9th Cir. 1998)). Plaintiff has not shown that her conditions of employment were so intolerable as to force her to resign in light of her indication that she "applied for a transfer so that she could remain with the agency and transfer with her husband." (Opp'n at 8.) Accordingly, summary judgment on the constructive discharge claim is granted.

12

#### D. Retaliation

Defendant seeks summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff cannot make a prima facie case of reprisal and that it "articulates legitimate, nondiscriminatory reasons for its actions." (Mot. at 18:6-12, 19:5-6.) Plaintiff contends that "the evidence . . . shows that [Plaintiff] was the only one not reassigned when the new staffing plan came out[,] that she did not receive a transfer to the Red Bluff region[,]" and that "[a]ll of this occurred shortly after the issuance of her [October 13, 2000] memo wherein she complained of her lack of accommodation." (Opp'n at 18.)

"To make out a prima facie case [of retaliation, Plaintiff] must establish that she acted to protect her [] rights, that an adverse employment action was thereafter taken against her, and that a causal link exists between these two events." Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994). Once Plaintiff has made a prima facie case, "[t]he burden of production then shifts to [Defendant] to advance legitimate, non-retaliatory reasons for any adverse actions taken against [Plaintiff]; she has the ultimate burden of showing that [Defendant's] proffered reasons are pretextual." Id.

Even assuming that Plaintiff has made a prima facie case on her retaliation claim, Plaintiff has not introduced substantial evidence to rebut Defendant's legitimate reasons for NRCS's actions. (See Mot. at 15:27-28, 16:1-2, 4-5, 15:5-6 and supporting evidence ("The decision to create a new staffing plan for the consolidation of the administrative staffs of three agencies was a National Headquarters project independent of any involvement of [P]laintiff's supervisors at the NRCS office in Davis"; "[P]laintiff was not

13

transferred or reassigned to Red Bluff, or a nearby location, because no vacant positions existed"; "[h]ad [Plaintiff] not moved from Davis, her Contract Specialist position would have not have been eliminated.").)  Therefore, Defendant's motion for summary judgment on Plaintiff's reprisal claim is granted.

## CONCLUSION

For the reasons stated, Defendant's motion to dismiss is denied and Defendant's motion for summary judgment is granted.  The clerk shall enter judgment for Defendant.

Dated:   March 27, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge